**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

TYLER W.,

                              Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,                No. 3:22-CV-01345
                                                (CFH)

                              Defendant.

─────────────────────────────────

**APPEARANCES:**                    **OF COUNSEL:**

Lachman & Gorton                    PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13760
Attorney for plaintiff

Social Security Administration      GEOFFREY M. PETERS, ESQ.
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

        Tyler W.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying his application for child insurance benefits and supplemental security income.

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, L.R. 72.2(b), L.R. 72.3(b), and General Order 18.  See Dkt. No. 7.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

See Dkt. No. 1.  Plaintiff seeks to "be found to be disabled" or, in the alternative, remand for further proceedings.  Dkt. No. 10.  The Commissioner opposes the motion.  See Dkt. No. 11.  For the following reasons, plaintiff's motion is granted, and the Commissioner's decision is reversed and remanded for further proceedings.

## I. Background

On October 9, 2019, plaintiff filed a Title II application for child's insurance benefits and for supplemental security income.  See T. at 13, 85, 398-407.[3]  Plaintiff alleged a disability onset date of September 2, 2018.  See id. at 399.  The Social Security Administration ("SSA") denied plaintiff's claim on December 23, 2019.  See id. at 175-91.  Plaintiff sought reconsideration of the decision, see id. at 192-95, 198, and his claim was again denied May 1, 2020.  See id. at 199-217.  Plaintiff requested a hearing, see id. at 224-32, and a hearing was held before Administrative Law Judge ("ALJ") Robyn L. Hoffman on December 17, 2020.  See id. at 36-53.  On April 13, 2021, the ALJ issued an unfavorable decision.  See id. at 147-62.  Plaintiff timely filed a request for review by the Appeals Council.  See id. at 281-85.  The Appeals Council vacated the decision and remanded the case to the ALJ for further proceedings, specifically further consideration of plaintiff's mental and pulmonary limitations.  See id. at 170-71.  ALJ Hoffman held a second hearing on December 9, 2021, and continued on December 22, 2021.  See id. at 54-84.  On January 14, 2020, the ALJ issued an unfavorable decision.  See id. at 10-27.  On October 27, 2022, the Appeals Council

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 8.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.

denied plaintiff's request for review of the ALJ's decision.  See id. at 1-3.  Plaintiff timely commenced this action on December 14, 2022.  See Compl.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817

F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has
> an impairment which is listed in Appendix 1 of the
> regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him [or her] disabled without
> considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a
> claimant who is afflicted with a "listed" impairment is unable
> to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-

disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas,

540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each

of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  Id. (citing Berry, 675 F.2d at 467).


**III. The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff "had not attained age 22 as of September 2, 2018, the alleged onset date" and he "ha[d] not engaged in substantial gainful activity since September 2, 2018[.]"  T. at 16.  At step two, the ALJ found that plaintiff "ha[d] the following severe impairments: cerebral palsy, asthma, central sleep apnea, and anxiety disorder[.]"  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 17-20.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform a range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).  Specifically, [plaintiff can] occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; sit for six hours; and stand or walk for six hours, all in an eight-hour workday with normal breaks.  He should avoid exposure to excessive amounts of respiratory irritants such as dust, odors, fumes, gases, extreme hot and cold temperatures, wetness, and humidity.  [Plaintiff] should work at simple, routine, and repetitive tasks.  He should work in a low stress job, defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting.  [Plaintiff] should work at goal-oriented work, rather than production pace rate work.

Id. at 20.  At step four, the ALJ determined that plaintiff did not have any past relevant work.  See id. at 25.  At step five, the ALJ concluded that "considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform[.]"  Id.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, from September 2, 2018, through the date of this decision[.]"  Id. at 27.

**IV. Discussion**

**A. The Parties' Arguments**[4]

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. See Dkt. No. 10 at 3. Specifically, plaintiff contends that the ALJ committed reversible error by failing to properly evaluate the medical opinion evidence in the record. See id. at 18-28. Plaintiff also asserts that the ALJ's RFC is not supported by substantial evidence, as the ALJ "fail[ed] to properly account for [his] limitations to staying on task and maintaining acceptable levels of work pace on account of the combination of his muscle fatigue and slow processing speed, both of which [are] caused by his cerebral palsy." Id. at 3.

The Commissioner argues that the "ALJ properly evaluated the medical opinions, [prior administrative medical findings ("PAMFs")], and other non-opinion statements of record." Dkt. No. 11 at 15. The Commissioner also asserts that "substantial evidence supports the RFC, which does not include off-task behavior limitations." Id. at 5.

**B. The ALJ's Evaluation of Medical Opinions**

Plaintiff contends that the ALJ erred in her assessment of the opinion evidence offered by school psychologist Angela Harvey (T. at 556-64); Dr. Christopher Yanusas (T. at 936-40); therapist Jill Van Pelt (T. at 886-918); nurse practitioner Doreen Yirenchi (T. at 609-10); state agency evaluators Dr. Sandra Juriga (T. at 95-96, 108-09) and Dr. Tammy Inman (T. at 126-27, 142-43); and state agency consultants Dr. Syed Ahmed (T. at 93-94, 106-07) and Dr. Michael Kirsch (T. at 123-25, 139-41). See Dkt. No. 10 at 18-28.

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

### 1. Angela Harvey, MS/CAS

On October 22, 2013, Angela Harvey, plaintiff's school psychologist, conducted a psychological evaluation to determine plaintiff's "levels of functioning as well as his educational needs." T. at 556-64. Following the evaluation, Ms. Harvey issued a nine-page "Confidential Psychological Report" that includes background information related to plaintiff's intellectual functioning; a summary of previous assessments he received; a summary of his social history; notes from an informal classroom observation, a student interview, and a teacher interview; as well as an assessment of plaintiff's cognitive, academic, and behavioral abilities. See id. As relevant here, Ms. Harvey assessed plaintiff's cognitive abilities using the Woodcock Johnson Tests of Cognitive Abilities – Third Edition (WJ-III Cog). See id. at 559-60. Plaintiff scored "very low" on the Processing Speed index, which "measures the ability to complete simple tasks quickly and accurately," and was in the 0.4th percentile. Id. at 560. Ms. Harvey concluded that plaintiff "had the most difficulty with tasks that measured his processing speed," and he "works much slower than other students his age." Id. at 564. Ms. Harvey also noted that plaintiff "needs extra time to complete tasks due to his low processing speed abilities." Id.

Plaintiff argues that the ALJ erred by failing to acknowledge Ms. Harvey's medical opinion. See Dkt. No. 10 at 19-20. The Commissioner concedes that the ALJ failed to address this evidence but argues that "the ALJ had no requirement to evaluate [her] statement because it is not a medical opinion." Dkt. No. 11 at 16. Specifically, the Commissioner asserts that "a medical opinion must outline work-related limitations not school limitations." Id. The Commissioner further argues that, even if the ALJ erred in

not discussing the report, such error is harmless because it is "essentially duplicative of other evidence." Id. at 16-17.

The Court disagrees with the Commissioner's characterization of Ms. Harvey's report. "Although the Commissioner has primacy in weighing the evidence, the ALJ is required to follow the Social Security regulations in doing so." Kasey G. v. Comm'r of Soc. Sec., 542 F. Supp. 3d 190, 195 (W.D.N.Y. 2021). "In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record." Shillenn v. Comm'r of Soc. Sec., No. 1:17-CV-01225 (MAT), 2019 WL 5586982, at *3 (W.D.N.Y. Oct. 30, 2019); see also Pike v. Kijakazi, No. 23-CV-583-A, 2024 WL 554300, at *5 (W.D.N.Y. Feb. 12, 2024) ("Under the SSA' new regulations, ALJs are required to evaluate medical opinions[.]") (citing 20 C.F.R. § 404.1520c(c)). "A medical opinion is a statement from a medical source about what [the plaintiff] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions" in his or her ability to perform physical, mental, or other demands of work activities. 20 C.F.R. § 404.1513(a)(2). The regulations define a medical source to include "an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d); see 20 C.F.R. § 416.902(i).

Ms. Harvey was plaintiff's school psychologist, and, therefore, a medical source. See 20 C.F.R. §§ 404.1502(d), 416.902(i). Accordingly, the ALJ was required to weigh and evaluate Ms. Harvey's statement as a medical opinion. See Vilma S. v. Comm'r of Soc. Sec., No. 1:23-CV-00025 (GRJ), 2024 WL 515259, at *3 (S.D.N.Y. Feb. 9, 2024) ("The ALJ is required to 'articulate how [he or she] considered the medical opinions' and

state 'how persuasive' he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors.") (quoting 20 C.F.R. § 404.1520c(b)(2)); see also Joseph G. v. Comm'r of Soc. Sec., No. 1:21-CV-00046 (DB), 2024 WL 641264, at *4-6 (W.D.N.Y. Feb. 15, 2024) (determining that the ALJ erred when she failed to fully consider the plaintiff's educational records, including a report from the plaintiff's school psychologist).

Contrary to the Commissioner's contentions, Ms. Harvey's evaluation of plaintiff's "school limitations" is relevant to his ability to perform work-related functions.  Under the regulations, the "mental demands of work activities" includes an individual's ability to "maintain[ ] concentration, persistence, or pace."  20 C.F.R. § 404.1513(a)(2)(ii).  As discussed, Ms. Harvey opined that plaintiff "works much slower than other students his age" and he "needs extra time to complete tasks due to his low processing speed abilities."  T. at 564.  In doing so, Ms. Harvey provided an opinion on plaintiff's ability to "maintain[ ] concentration, persistence, or pace," which is directly relevant to his ability "to perform mental demands of work activities."  20 C.F.R. § 404.1513(a)(2)(ii).

Further, the SSA "has promulgated specific guidance with respect to the evaluation of disability in young adults, who it defines as 'people between the ages of 18 to approximately 25.'"  Joseph G., 2024 WL 641264, at *5 (quoting SSR 11-2p, 2011 WL 4055665 (Sept. 12, 2011)).  Specifically, the SSA has "address[ed] the task of extrapolating a young adult's work-related limitations from his performance in school."  Id.  Social Security Ruling ("SSR") 11-2p provides that "evidence about a young adult's functioning from school programs, including IEPs[,] . . . may indicate how well a young adult can use his or her physical or mental abilities to perform work activities."  SSR 11-

2p, 2011 WL 4055665 at *7.  One "example[ ] of school-reported difficulties [that] might indicate difficulty with work activities" is an individual's "[d]ifficulty with maintaining attention for extended periods in a classroom."  Id.  "SSR 11-2p is binding on ALJs." E.M. v. Kijakazi, 591 F. Supp. 3d 595, 621 (N.D. Cal. 2022) (citing Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984) (stating that Social Security Rulings are binding on all SSA decisionmakers), Ka'deef M. v. Comm'r of Soc. Sec., No. 3:20-CV-787 (DJS), 2021 WL 2952801, at *5-6 (N.D.N.Y. July 14, 2021) (same), and Samuel v. Comm'r of Soc. Sec., No. 14-CV-4634 (PKC), 2015 WL 5774850, at *14 (E.D.N.Y. Sept. 30, 2015) (remanding where the ALJ failed to review school records, including school psychologist records, in conflict with SSR 11-2p)) (additional citations omitted).

It is unclear how the ALJ considered Ms. Harvey's opinion in rendering her decision.  Other than two citations to the evaluation's exhibit number 3F, the ALJ's decision does not mention Ms. Harvey's psychological evaluation, nor does it include the required consistency and supportability analysis.  See T. at 19 ("The [plaintiff] exhibited processing speed deficits, consistent with both school testing, as well as more recent evaluation"); see also T. at 22 ("With respect to the mental conditions, the [plaintiff]'s school records show difficulty with focus and follow through, as well as slow processing speed").  Specifically, the ALJ does not expressly adopt or reject Ms. Harvey's evaluation of plaintiff's intellectual functioning, nor explain the reasons for adopting or rejecting Ms. Harvey's evaluation.  See Robert R. v. Kijakazi, No. 20-CV-1892L, 2022 WL 1607022, at *3 (W.D.N.Y. May 20, 2022) ("[T]he ALJ's failure to consider or even mention [medical] opinions concerning [the] plaintiff's mental [functioning]—suggesting that he may have overlooked them entirely—constitutes

reversible error [because the] plaintiff was entitled to consideration of [the] assessments, and an explanation for the ALJ's rejection of the limitations they described."); see also Kasey G., 542 F. Supp. 3d at 195 ("[T]he ALJ is required to consider [all medical opinion] evidence in assessing the RFC, including by explaining [her] reasons for either adopting or rejecting [the medical opinion evidence].").[5]

Moreover, the ALJ's failure to properly evaluate Ms. Harvey's opinion is not harmless error.  See, e.g., Johnathan W. v. Saul, No. 6:19-CV-1242 (CFH), 2021 WL 1163632, at *7 (N.D.N.Y. Mar. 26, 2021) (finding that the ALJ's failure to articulate how persuasive he found a medical opinion, and his failure to explicitly explain the supportability and consistency factors, was not harmless error because the opinion could have impacted the ALJ's analysis in a meaningful way); see also Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019) (explaining that, in determining whether an ALJ's error is harmless, "the question becomes whether 'a searching review of the record . . . assure[s the reviewing court] . . . that the substance of the [regulation] was not traversed'") (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)).  "An ALJ's failure to properly consider a medical opinion is harmless error where the medical opinion is 'essentially duplicative' of other evidence, or is not 'significantly more

---

[5] The Commissioner also asserts that Ms. Harvey's opinion is "many years removed from the relevant period" and is, therefore, "not probative of [p]laintiff's functioning[.]"  Dkt. No. 11 at 16.  However, as plaintiff argues, "[t]his is an improper post hoc argument not considered by the ALJ.  This may go to persuasiveness but is not a ground to fail to evaluate the opinion at all."  Dkt. No. 12 at 3 (citing Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)).  Moreover, this argument is "contrary to the Commissioner's guidance in SSR 11-2p."  Joseph G., 2024 WL 641264, at *6 (rejecting the Commissioner's argument that "the ALJ was entitled to disregard [the school psychologist]'s opinion because it was dated several months before [the p]laintiff's alleged onset date").  Regardless of plaintiff's alleged onset date, given "the lack of any significant work experience from which to draw comparisons, school records may provide the most comprehensive insight into his level of functioning . . . directly relevant to the ALJ's inquiry into [p]laintiff's ability to maintain attention and concentration" in the workplace.  Ka'deef M., 2021 WL 2952801, at *6.

favorable' to [the p]laintiff than other evidence considered by the ALJ, or was otherwise consistent with the ALJ findings." Tammy T. v. Kijakazi, No. 5:21-CV-1, 2022 WL 71995, at *13 (D. Vt. Jan. 7, 2022) (quoting Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010)); but see Kelly S. v. Kijakazi, No. 3:20-CV-1232 (DJS), 2022 WL 279555, at *5 (N.D.N.Y. Jan. 31, 2022) ("[T]he medical opinion . . . , if accepted, would have materially changed the RFC and likely affected the ability of [the p]laintiff to find other work."); Holly S. v. Comm'r of Soc. Sec., No. 3:20-CV-597 (MAD/DEP), 2022 WL 580446, at *6 (N.D.N.Y. Feb. 25, 2022) ("Several [more restrictive] findings occurred across multiple medical opinions.  It seems entirely plausible to this Court that any one of these limitations could have more than a negligible impact on [the plaintiff]'s ability to perform the full range of work.") (internal quotation marks and citations omitted).

First, Ms. Harvey's medical opinion is not "essentially duplicative of other evidence."  Dkt. No. 11 at 16.  The Second Circuit has found medical evidence to be duplicative when the ALJ has considered a "largely identical" report issued by "the same doctor."  Zabala, 595 F.3d at 409-10 (finding harmless error where the ALJ failed to consider a physician's report, because that evidence was "largely identical" to a prior report" issued by "the same doctor, which the ALJ did consider").  Here, the record does not contain a second report from Ms. Harvey.  See Lisa B. v. Comm'r of Soc. Sec., No. 5:21-CV-493 (CFH), 2022 WL 1473277, at *7 (N.D.N.Y. May 10, 2022) (stating there was harmless error where the ALJ failed to address a 2018 medical opinion but analyzed a 2019 medical opinion from the same doctor, because the opinions, though not identical, were "similar enough").  Further, Ms. Harvey's opinion does not provide "duplicative information" already before the ALJ, as there is no other evaluation in the

record dated from the same time period or using the same assessment techniques or standards.  Cf. Ashley M. v. Comm'r of Soc. Sec., No. 2:20-CV-195, 2023 WL 3033283, at *13 (D. Vt. Apr. 21, 2023) (concluding that medical evidence was "duplicative of information already before the ALJ" where the evidence described the plaintiff's diagnoses during a time period that was "well documented in the other records previously provided to the ALJ").

Second, Ms. Harvey's opinion may be "significantly more favorable" to plaintiff, given that her evaluation of plaintiff's mental functioning provides more restrictive limitations regarding his ability to concentrate, persist, or maintain pace.  Zabala, 595 F.3d at 409 (citing Snell v. Apfel, 177 F.3d 128, 130, 134 (2d Cir. 1999)); see Gonzalez v. Colvin, No. 15-CV-6216, 2016 WL 5793425, at *8 (W.D.N.Y. Sept. 30, 2016) (remanding case for the ALJ's failure to "properly evaluate" a school psychologist's opinion, where the opinion was "significantly more restrictive" than the other medical evidence in the record).  Specifically, Ms. Harvey opines that plaintiff "need[s] extra time to get his work done" and he "works much slower than other students his age."  T. at 562.  Ms. Harvey supported her opinion with the results from her extensive testing of plaintiff's cognitive, academic, and behavioral abilities, using the Woodcock Johnson Tests of Cognitive Abilities – Third Edition (WJ-III Cog), the Woodcock Johnson Tests of Achievement – Third Edition (WJ-III Ach), and the Behavior Assessment System for Children – Second Edition (BASC-2).  T. at 556-63.  Her opinion is not "similar enough" to other opinions in the record that the ALJ explicitly considered in rendering her decision, as these other opinions used different assessment methods, such as Dr. Yanusas using the Wechsler Adult Intelligence Scale-IV (WAIS-IV).  Lisa B., 2022 WL

1473277, at *7; T. at 937.  Moreover, Ms. Harvey's testing put plaintiff in the 0.4th percentile for Processing Speed Index, yet Dr. Yanusas's testing put plaintiff in the 4th percentile for Processing Speed Index.  Compare T. at 559, with T. at 937.  Thus, Ms. Harvey's opinion "might have affected the ALJ's decision insofar as" she indicates that plaintiff is not capable of maintaining pace or staying on task.  Kim E. v. Comm'r of Soc. Sec., No. 1:20-CV-01784 (CJS), 2022 WL 797462, at *8 (W.D.N.Y. Mar. 16, 2022) (remanding where there was "excluded evidence contain[ing] opinions from [the p]laintiff's doctors concerning her work-related functional limitations which [were] not merely duplicative of other evidence and which might have affected the ALJ's decision"); see T. at 564 ("[Plaintiff] needs extra time to complete tasks due to his low processing speed abilities, in order to allow for refocusing and completion of difficult work, especially when it requires physical effort."); see also Dkt. No. 11 at 5 (acknowledging that the ALJ's RFC determination does not include limitations for plaintiff's off-task behavior).

Accordingly, "remand is required so that the ALJ may consider the opinion offered by [Ms. Harvey], as well as its impact on the disability determination."  Kasey G., 542 F. Supp. 3d at 196; see also Brandy Marie T. A. v. Comm'r of Soc. Sec., No. 6:18-CV-0510 (DEP), 2019 WL 2264977, at *5 (N.D.N.Y. May 28, 2019) ("If it would affect work, and there was nothing in the RFC that addressed this, it's not harmless error.").

### 2. Christopher Yanusas, Ph.D.

In May and June 2019, Dr. Christopher Yanusas performed a neuropsychological evaluation of plaintiff.  See T. at 934-40.  Dr. Yanusas administered "multiple behavioral measures" to assess plaintiff's "psychosocial and emotional functioning."  Id. at 936.

Specifically, Dr. Yanusas evaluated plaintiff using the Wechsler Adult Intelligence Scale – IV (WAIS-IV) and found that plaintiff's performance on the Working Memory Index "fell in the below average range" (in the 13th percentile) and his performance on the Processing Speed Index "fell in the well below average range" (in the 4th percentile).  Id. at 937.  Dr. Yanusas noted that plaintiff's "processing speed was poor for tasks emphasizing clerical speed and accuracy and sustained attention."  Id.  Dr. Yanusas concluded that plaintiff's "profile indicated the presence of executive functioning deficits in the areas of working memory, divided attention, and most prominently, information processing speed . . . [These] deficits suggest he would require a highly structured environment to complete complex tasks including receiving assistance."  Id. at 939-40.

The ALJ cited to Dr. Yanusas' evaluation and noted that he "provided no specific functional limits, but identified deficits in the areas of working memory, divided attention, and information processing speed.  Dr. Yanusas wrote that [plaintiff]'s deficits suggest that [plaintiff] would require a highly structured environment to complete complex tasks." T. at 24-25.  The ALJ "considered Dr. Yanusas's examination findings and assessments, and incorporated the same into the 'paragraph B' criteria and the adopted residual functional capacity."  Id. at 25.

Plaintiff argues that the ALJ erred because she "never explained how persuasive she found [Dr. Yanusas'] opinion to be" and she "also engaged in no discussion whatsoever of the supportability or consistency factors."  Dkt. No. 10 at 20.  The Commissioner asserts that, "[a]lthough the ALJ did not make a specific 'persuasiveness' finding . . . , the ALJ implicitly found Dr. Yanusas' opinion persuasive by incorporating it into the RFC."  Dkt. No. 11 at 17.  The Commissioner further contends that "the ALJ had

adopted Dr. Yanusas' opinion after considering the regulatory factors of supportability and consistency." Id. at 18.

An ALJ "must consider all medical opinions and 'evaluate the[ir] persuasiveness' based on their supportability and consistency, the author's relationship with the claimant and specialization, and 'other factors.'" Cassandra G. v. Comm'r of Soc. Sec., 626 F. Supp. 3d 553, 564 (N.D.N.Y. 2022) (quoting 20 C.F.R. § 416.920c(a)-(c)); see also 20 C.F.R. § 404.1520c(a)-(c).  "Although the ALJ is not required to assign a specific 'weight' to a medical opinion, the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'" Id. (quoting § 416.920c(a) and (b)(1)); see also 20 C.F.R. § 404.1520c(a), (b)(1).  The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).  "A conclusory analysis of the [relevant] factors 'precludes the Court from undertaking meaningful review' of the ALJ's decision.  Indeed, '[c]ourts in this Circuit have remanded when the ALJ failed to address either

supportability or consistency.'"  Annjeanette B. v. Kijakazi, No. 3:22-CV-198 (ATB), 2023 WL 3040663, at *8 (N.D.N.Y. Apr. 21, 2023) (citations omitted).

"Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his [or her] RFC determination while ignoring other evidence to the contrary."  Jackson v. Kijakazi, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (citing Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *27 (S.D.N.Y. Sept. 24, 2021) (collecting cases)).  As the Commissioner states, "it is not the Court's function to reweigh the evidence that was before the ALJ." Mary M. v. Comm'r of Soc. Sec., No. 8:20-CV-1594 (TWD), 2022 WL 823850, at *11 (N.D.N.Y. Mar. 17, 2022) (citing Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993)); see also Dkt. No. 11 at 12, 14, 21.  "However, the ALJ is required to explain [her] reasoning to a sufficient degree such that the Court can, at the very least, glean [her] rationale in making the RFC determination."  Malia Ann B. v. Comm'r of Soc. Sec., No. 5:21-CV-1362 (AMN/CFH), 2023 WL 2838054, at *5 (N.D.N.Y. Feb. 23, 2023) (citing Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision[.]")), report and recommendation adopted, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023).

The Court does not know how persuasive the ALJ found Dr. Yanusas' opinion. "It is an ALJ's affirmative duty to 'articulate in [a] determination or decision how persuasive [she] find[s] all of the medical opinions . . . in [the] case record.'"  Glenn G. v. Kijakazi, No. 3:22-CV-824 (RMS), 2023 WL 2477501, at *13 (D. Conn. Mar. 13, 2023) (citing 20 C.F.R. § 404.1520c(b)).  Failure to do so "may warrant remand on its own."

Id. (citations omitted); see Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) ("The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record") (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)); see also Rivera v. Comm'r of the Soc. Sec. Admin., No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020) (remanding for the ALJ to "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the [medical] opinions"), report and recommendation adopted sub nom. Rivera v. Comm'r of Soc. Sec. Admin., 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

Further, the ALJ's analysis makes no mention of the supportability or consistency factors as to Dr. Yanusas' opinion. See T. at 24-25; see also Febus v. Kijakazi, No. 20-CV-8314 (OTW), 2022 WL 3013106, at *2 (S.D.N.Y. July 29, 2022) ("ALJs must consider all medical opinions and determine their respective persuasiveness considering: supportability; consistency; relationship of the medical source to the claimant; specialization; and 'other factors.'") (quoting 20 C.F.R. § 404.1520c(c)(1)-(5)). As for supportability, the ALJ did not explicitly address whether Dr. Yanusas "provided supporting explanations for his . . . opinion." Loni S. v. Comm'r of Soc. Sec., No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *14 (N.D.N.Y. June 27, 2023). Although the ALJ noted that "Dr. Yanusas provided no specific functional limits" for his evaluation, the ALJ provided no further explanation. T. at 24. Indeed, as plaintiff argues, it appears that Dr. Yanusas "identified limitations to verbal working memory, sustained attention, processing speed, accuracy, divided attention, shifting conceptual sets, sequential planning, and conceptual flexibility[.]" Dkt. No. 10 at 21; see also T. at 937-39. Thus,

without further explanation, "the Court cannot 'adequately "glean" how the ALJ weighed the . . . supportability factor[ ].'" Glenn G., 2023 WL 2477501, at *13 (quoting Ricky L. v. Comm'r of Soc. Sec., No. 20-CV-7102 (FPG), 2022 WL 2306965, at *3 (W.D.N.Y. June 27, 2022)).

As for consistency, the ALJ does not address "how well [Dr. Yanusas' opinion] is supported, or not supported, by the entire record." Rua-Campusano v. Kijakazi, No. 20-CV-7087 (GBD/SLC), 2021 WL 7287628, at *10 (S.D.N.Y. Dec. 10, 2021) ("Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."), report and recommendation adopted, 2022 WL 493390 (S.D.N.Y. Feb. 17, 2022). The Commissioner contends that the ALJ's citations to the record during her evaluation of the "paragraph B" criteria satisfies her obligation in evaluating the consistency of Dr. Yanusas' opinion. See Dkt. No. 11 at 18 (citing T. at 25). However, the Court disagrees. The ALJ did not articulate the consistency of Dr. Yanusas' findings such that this Court could "trace the path of [the ALJ]'s reasoning." Traci S. v. Kijakazi, No. 3:21-CV-01582 (VAB), 2023 WL 2552724, at *8 (D. Conn. Mar. 17, 2023) ("[T]he articulation requirements in [the new regulations] are intended to allow a . . . reviewing court to trace the path of an adjudicator's reasoning.") (internal quotations marks and citation omitted). Although the ALJ provided a summary of some of Dr. Yanusas' findings alongside other opinions in a different section of her decision (T. at 19), the ALJ's decision did not adequately consider the consistency factor relative to Dr. Yanusas' opinion. See Amber H. v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *8 (N.D.N.Y. May 24, 2021) ("[T]he ALJ's fleeting discussion of Dr. Magurno's opinion falls short of satisfying the articulation requirements contained in the

new regulations, especially considering the ALJ's failure to discuss the extent to which Dr. Magurno's opinion was consistent with the other evidence of record, medical or otherwise[.]"); see also Alexa J. M. v. Kijakazi, No. 5:22-CV-243 (BKS/ML), 2023 WL 4467124, at *4 (N.D.N.Y. July 11, 2023) ("[A]lthough the ALJ elsewhere in the decision discussed NP McNally's treatment notes, . . . that discussion does not elucidate how those treatment notes fail to support an opinion that [the p]laintiff would be off-task more than twenty percent of an eight-hour workday or absent from work about four days per month").

Therefore, on remand, the ALJ should address the persuasiveness of Dr. Yanusas' opinion, along with the consistency and supportability factors.

### 3. Jill Van Pelt, LCSW-R

Plaintiff treated with therapist Jill Van Pelt, LCSW-R, between October 2020 and November 2021. See T. at 886-918. The administrative transcript includes Ms. Van Pelt's appointment notes dated from October 19, 2020, to October 26, 2021; a mental health assessment dated November 3, 2020; as well as a mental questionnaire dated November 1, 2021. See T. at 886-90, 891-913, 916-18. In her appointment notes, Ms. Van Pelt states that plaintiff says he has "difficulty putting actions together to achieve goals," he experiences "fatigue" and "brain fog." Id. at 899. She notes his report that he previously worked a janitorial position at a grocery store, but this didn't work out because he "didn't have the stamina to work there" and "his pace was too slow." Id. at 893, 899, 907. After meeting with plaintiff regularly for approximately one year, Ms. Van Pelt reported that plaintiff had: (1) a marked limitation in maintaining attention and concentration; (2) an extreme limitation in performing activities within a schedule, being

punctual, and performing at a consistent pace; and (3) a marked limitation in responding appropriately to ordinary stressors in a work setting with simple tasks.[6]  See id. at 916 (noting that plaintiff "has difficulty and gets 'stuck' when he has to do multiple tasks[; he] also has difficulty prioritizing tasks. It took longer for [him] to complete tasks at work, he works at a slower pace").  Ms. Van Pelt described satisfactory or moderately-impaired[7] abilities in other areas of mental functioning, such as getting along with co-workers and interacting appropriately with the public.  See id.  Ms. Van Pelt opined that, due to the limitations she has observed, plaintiff would likely be off task more than 33% of the workday.  See id. at 917.  Ms. Van Pelt explained that plaintiff "wasn't able to complete tasks due to slower pace [and he] couldn't finish a task and then had to go do another task."  Id.

The ALJ found that "Ms. Van Pelt's predictions of time spent off-task and likely workplace attendance are both poorly supported and speculative."  T. at 25.  Specifically, the ALJ noted that, although "Ms. Van Pelt estimated that [plaintiff] would likely be off-task more than 33% of a typical day, and absent from work one day per month[, s]uch pronounced restrictions appear to be based primarily on [plaintiff]'s self-reports, as Ms. Van Pelt's treatment notes reflect no such difficulties."  Id.

Plaintiff argues that the ALJ erred by failing "to state how persuasive she found [Ms. Van Pelt's] opinion" and failing to properly "address the supportability or

---

[6] Ms. Van Pelt used a check-box form, defining a "marked limitation" as "a serious limitation in this area[; t]here is a substantial loss in the ability to effectively function the loss would be greated than 33%" and "extreme limitation" as "a major limitation in this area[; t]here is no or very little useful ability to function in this area."  T. at 916.

[7] "Moderate" limitation is defined in the check-box form as "more than slight but less than a serious limitation.  The Individual is still able to function satisfactorily for certain portion of the day and/or perform the tasks satisfactorily on some of the occasions.  The approximate of loss would be more than 20% for the particular activity but less than 1/3 of the day. (33%)."  T. at 916.

consistency factors." Dkt. No. 10 at 21-22. Plaintiff acknowledges that the ALJ determined Ms. Van Pelt's findings were "poorly supported and speculative," but argues that "such conclusory statements without explanation or reference to the medical evidence do not fulfill the ALJ's obligations to explain how she considered the supportability and consistency factors" of Ms. Van Pelt's opinion. Id. at 21. The Commissioner asserts that the ALJ did not err, as she "clearly rejected [Ms.] Van Pelt's opinion" and did so "after examining both supportability and consistency." Dkt. No. 11 at 19-20.

"[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). The Court "defer[s] to the Commissioner's resolution of conflicting evidence[.]" Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citation and quotation marks omitted). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, 'whether there is substantial evidence supporting the [plaintiff's] view is not the question [ ]; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision.'" Elizabeth P. v. Comm'r of Soc. Sec., No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022) (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis omitted)). The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh

the evidence that was before the ALJ." April B. v. Saul, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted).

"District courts in the Second Circuit have reiterated . . . that an ALJ errs where he or she summarily concludes that an opinion is unsupported by treatment notes or inconsistent with the record." Loni S., 2023 WL 4195887, at *15 (citing Stephanie F. v. Kijakazi, No. 8:20-CV-1528 (BKS), 2022 WL 3355964, at *10 (N.D.N.Y. Aug. 15, 2022) ("[T]he ALJ's conclusory statement that [the provider's] conclusions 'are not consistent with the overall medical evidence' is not an adequate articulation of the consistency factor."), Annjeanette B., 2023 WL 3040663, at *8 ("The ALJ merely concludes that [the] opinions regarding time off-task and absenteeism are 'purely speculative,' without further explanation.  However, the ALJ appears to ignore [one provider's] written explanation for his opinion, attributing the amount of time plaintiff would be off-task and absent to [the] plaintiff's limited mobility and concentration from her chronic back pain; her pain and frequent bathroom trips due to Crohn's Disease; her shortness of breath and coughing due to asthma; and her difficulty concentrating and staying on task due to her bipolar disorder.  Likewise, [the other provider] cited to [the] plaintiff's symptoms stemming from Crohn's disease, chronic knee and back pain, and bipolar disorder as support for her restrictive opinion concerning time off-task and absenteeism."), and Ayala v. Kijakazi, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) ("The ALJ's assessment of the supportability of [the] opinions is highly conclusory.  The ALJ offered only that '[one] opinion is supported by record review' and that '[the other] opinion is supported by

examination.'  Such conclusory statements offer no insight into 'how well [either doctor] supported and explained their opinion,' and are insufficient to withstand review.")).

Here, the ALJ summarily concluded that Ms. Van Pelt's opinion was "poorly supported" and "speculative," T. at 25, and "such conclusory statements are insufficient to meet the articulation requirements of the regulations."  Loni S., 2023 WL 4195887, at *16.  The Court agrees with the Commissioner that the ALJ addressed the supportability of Ms. Van Pelt's opinion.  See Dkt. No. 11 at 20; see also T. at 25 ("[Ms. Van Pelt's] pronounced restrictions appear to be based primarily on [plaintiff]'s self-reports."); Ashleigh L. v. Kijakazi, No. 3:22-CV-675 (SVN), 2023 WL 6357000, at *7 (D. Conn. Sept. 29, 2023) (finding no error in the ALJ's supportability assessment of a medical opinion, which the ALJ found unsupported because it was based on the plaintiff's self-reports instead of "objective medical findings").  However, the ALJ did not provide an explanation as to the consistency of Ms. Van Pelt's opinion with the "evidence from other medical sources and nonmedical sources" in the record.  20 C.F.R. § 416.920c(c)(2); see Elizabeth P., 2022 WL 507367, at *10-14 ("However, although the ALJ incorporated most of Dr. Khan's limitations, she did not incorporate his time off task or absenteeism limitation, claiming it to be 'speculative' . . . Stating that a portion of an opinion is 'speculative' without reference to that provider's records or the record as a whole does not explain the supportability or consistency of the opinion such that the Court can glean the ALJ's rationale."); cf. Sandra D. v. Comm'r of Soc. Sec., No. 5:20-CV-1067 (LEK/ATB), 2022 WL 344058, at *2, 6 n.1 (N.D.N.Y. Feb. 4, 2022) (finding no error in the ALJ's conclusion that a time off task limitation "was speculative and not supported by any objective evidence[ ]" because it was "the only opinion to specifically

address off-task time" and "the record does address the issue, but conspicuously lacks any mention of the necessity of greater limitation[.]").  As plaintiff argues, there is other evidence in the record indicating limitations that could cause him to be off task during a workday.  See, e.g., T. at 430 (in school, plaintiff "worked at decreased speed at times and required increased time to complete writing tasks"); T. at 564 (plaintiff "need[s] extra time to get his work done" and "had the most difficulty with tasks that measured his processing speed"); T. at 613 (plaintiff is "[p]ositive for the difficulty with concentration, focus and memory"); T. at 937 (plaintiff has "diminished ability to hold information in verbal working memory due to variable sustained attention.").  Although the ALJ may have found Ms. Van Pelt's opinion to be inconsistent with the other evidence in the record, "the lack of discussion as to why the ALJ reached such a conclusion precludes meaningful review by this Court."  Annjeanette B., 2023 WL 3040663, at *8.

On remand, the ALJ should discuss how persuasive she considers Ms. Van Pelt's opinion, including the consistency factor.

### 4. Doreen Yirenchi, NP

Due to his "history of cerebral palsy and seizures," plaintiff is routinely seen by Neuro Medical Care Associates, PLLC.  T. at 609.  On August 7, 2018, plaintiff saw Nurse Doreen Yirenchi, a provider at Neuro Medical Care.  See id. at 608-09.  Nurse Yirenchi noted that plaintiff's central nervous system examination revealed that he was alert and fully oriented, that his speech was clear, and his cranial nerves were intact.  See id. at 608.  Nurse Yirenchi stated that plaintiff "brought in a paper asking if he is able to work" and that she "completed the paper stating that he could work with some limitation."  Id.  The ALJ found Nurse Yirenchi's opinion to be "somewhat persuasive,

but as the details of said limitations are not specified, this limits the persuasiveness of her opinion." Id. at 23.

Plaintiff argues that the ALJ (1) failed to address the consistency and supportability factors, and (2) improperly relied on Nurse Yirenchi's conclusion that plaintiff "could work, with some limitations" because "statements whether someone can or cannot work are 'inherently neither valuable nor persuasive.'" Dkt. No. 10 at 27 (quoting 20 C.F.R. § 404.1520b(c)(3)(i)).

Plaintiff is correct that "the ultimate conclusion of whether an individual is 'disabled' or 'unable to work' is reserved to the Commissioner and conclusory opinions by others are entitled to no particular weight." Vogelsang v. Comm'r of Soc. Sec., 657 F. Supp. 3d 450, 464 (S.D.N.Y. 2023) (citing Nunez v. Astrue, No. 11-CV-8711 (PKC), 2013 WL 3753421, at *11 (S.D.N.Y. July 17, 2013)). Because such evidence is "inherently neither valuable nor persuasive," an ALJ is under no obligation to "provide any analysis about how [he or she] considered such evidence in [his or her] determination or decision[.]" 20 C.F.R. § 404.1520b(c); see Antoinette P. v. Comm'r of Soc. Sec., No. 1:20-CV-001675 (TPK), 2022 WL 17404288, at *4 (W.D.N.Y. Dec. 2, 2022) (explaining that a statement as to whether the plaintiff could work, "which does not include any opinion about [the p]laintiff's specific mental limitations[,] is not one which is required to be analyzed [and i]t also does not carry any evidentiary weight"). Thus, the ALJ was not required to provide any analysis about how she considered Nurse Yirenchi's statement plaintiff "could work with some limitation." T. at 609. The ALJ was also not required to address the supportability or consistency of Nurse Yirenchi's statement. See, e.g., Rachel D. v. Comm'r of Soc. Sec., 573 F. Supp. 3d

892, 900 (W.D.N.Y. 2021) (holding that a statement by a medical source that the plaintiff was "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner and, therefore, the ALJ was not required to consider that statement).

Contrary to plaintiff's contentions, the ALJ did not err when she did not address the overall supportability or consistency of Nurse Yirenchi's letter.  As discussed, the applicable regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the "ability to perform the physical," "mental," and "other demands of work activities" as well as in the "ability to adapt to environmental conditions."  20 C.F.R. § 404.1513(a)(2).  In her letter, Nurse Yirenchi summarizes plaintiff's central nervous system examination, stating objective observations such as "cranial nerves are intact" and "motor tone and power are good."  T. at 609.  However, Nurse Yirenchi does not otherwise provide an opinion "about what [plaintiff] can still do despite [his] impairment(s)" or whether he has any work-related limitations.  20 C.F.R. § 404.1513(a)(2); see Lisa A. S. v. Kijakazi, No. 5:21-CV-00078 (BKS/CFH), 2022 WL 4494189, at *8 (N.D.N.Y. Sept. 28, 2022) (concluding that statements did not qualify as a medical opinion under the new regulations because the physician did not "indicate what [the p]laintiff 'can still do' despite a 'likely' impairment in her social skills, ability to concentrate, and ability to work with others.");  see also Michael H. v. Saul, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021) (determining that a medical progress note did not constitute medical opinion because, "[w]hile it discusses [the p]laintiff's limitations, it does not discuss what [the p]laintiff is still capable of doing."); Kimberly B. v. Comm'r of Soc. Sec., No. 5:22-CV-350

(ATB), 2023 WL 3318488, at *10 (N.D.N.Y. May 9, 2023) (finding neuropsychological report did not meet regulatory definition of medical opinion because it described the plaintiff's attention and concentration as "a relative weakness" but "did not discuss her ability to perform tasks despite the limitation."). Thus, because Nurse Yirenchi's letter does not meet the regulatory definition of a "medical opinion," the ALJ did not err by declining to address the overall consistency and supportability of the letter.

### 5. Sandra Juriga, Ph.D. and Tammy Inman, Ph.D.

On December 19, 2019, state agency reviewing psychologist, Dr. Sandra Juriga, reviewed plaintiff's records. See T. at 91-92, 94-96, 104-05, 108-09. Dr. Juriga assessed plaintiff to have moderate limitations in his ability to carry out detailed instructions; moderate limitations in his ability to maintain attention and concentration for extended periods; moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods. See id. at 95. Dr. Juriga noted that plaintiff's "[a]ttention and concentration [appear] impaired" and that he "took 50 minutes to complete a [medical] history form that should only take 15 minutes." Id.

Upon reconsideration, on April 28, 2020, Dr. Tammy Inman also reviewed plaintiff's records. See T. at 122, 126-28, 138, 142-43. Dr. Inman similarly determined that plaintiff had moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at

a consistent pace without an unreasonable number and length of rest periods.  See id. at 126.  Dr. Inman stated that plaintiff "may get distracted at times and have some difficulty maintaining pace [due to] motivational factors, but this would not prevent him from working."  Id. at 128.

The ALJ explained that both Dr. Juriga and Dr. Inman "described moderate limitations in [plaintiff]'s ability to concentrate, persist and maintain pace," yet "[b]oth doctors concluded that [plaintiff] retains the ability to perform unskilled work on a sustained basis."  T. at 24.  The ALJ concluded that Dr. Juriga's and Dr. Inman's opinions were "more persuasive" than other opinions in the record.  Id.  The ALJ noted that their opinions

> are based upon reviews of the relevant medical evidence, and are supported by detailed explanation.  Additional factors adding to the persuasiveness of the doctors' assessments are their familiarity with the Agency's disability program policies and evidentiary requirements, and the fact that the explicit purpose of their reviews was to render medical opinions on disability using said criteria.

Id.

Plaintiff argues that it was erroneous for the ALJ to determine that Dr. Juriga's and Dr. Inman's opinions were "more persuasive" given that the ALJ did not adequately assess the consistency and supportability factors as required by the regulations.  Dkt. No. 10 at 22-24.  The Commissioner argues that the ALJ properly reviewed the supportability and consistency factors, and reasonably found Drs. Juriga's and Inman's opinions "more persuasive."  Dkt. No. 11 at 22-23.

"[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be

qualified experts in the field of social security disability." <u>Baszto v. Astrue</u>, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010); <u>see</u> <u>Amber H.</u>, 2021 WL 2076219, at *5 ("It is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims.").  An ALJ is still required, however, to articulate how persuasive he or she finds the medical opinion of such consultants, including how he or she considered the supportability and consistency factors.  <u>See</u> 20 C.F.R. § 404.1520c.

Here, although the ALJ found Dr. Juriga's and Dr. Inman's opinions "more persuasive," the ALJ failed to sufficiently explain how she considered the consistency or supportability of their opinions.  <u>See</u> <u>Jaleesa H. v. Comm'r of Soc. Sec.</u>, No. 1:20-CV-01180 (EAW), 2022 WL 174337, at *5 (W.D.N.Y. Jan. 18, 2022) (remanding where "the ALJ did not explain anything—instead, he made a conclusory statement that [an] opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations.").  Specifically, the ALJ did not address the opinions' consistency or discuss how the opinions were supported with explanation, except to conclude that they were.  <u>See</u> T. at 24.  The ALJ's conclusory references to Dr. Juriga's and Dr. Inman's expertise and "the record as a whole" fails "to meet the[ ] minimum levels of articulation [and] frustrates this [C]ourt's ability to determine whether her disability determination was supported by substantial evidence."  T. at 19; <u>Warren I. v. Comm'r of Soc. Sec.</u>, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021); <u>see</u> <u>also</u> <u>Raymond M. v. Comm'r of Soc. Sec.</u>, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021)

(finding error where "[t]he ALJ provided no substantive explanation for her conclusion that [an] opinion was persuasive, making only general reference to the state agency consultant's expertise and experience, and his review of the available record.").

"None of this is to say that on remand, the ALJ could not ultimately come to a similar conclusion"—that Dr. Juriga's and Dr. Inman's opinions are "more persuasive." Brenda Lee B. v. Comm'r of Soc. Sec., No. 5:20-CV-1403 (CFH), 2022 WL 1421821, at *9 (N.D.N.Y. May 4, 2022) (citing Kimberly W. v. Kijakazi, No. 6:20-CV-925 (DJS), 2022 WL 561665, at *5 (N.D.N.Y. Feb. 24, 2022)).  "However, the ALJ must sufficiently explain the relevant factors such that the Court can meaningfully review whether those conclusions are based on substantial evidence."  Id. (citing Stacy D. v. Comm'r of Soc. Sec., 358 F. Supp. 3d 197, 202 (N.D.N.Y. 2019) ("An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.")).

On remand, the ALJ should discuss the consistency and supportability factors regarding the opinions offered by both Dr. Sandra Juriga and Dr. Tammy Inman.

### 6. Syed Ahmed, M.D. and Michael Kirsch, M.D.

"State Agency Consultants [Dr.] Syed Ahmed,[ ] who reviewed the claimant's records in December 2019, and [Dr.] Michael Kirsch, [ ] who performed an independent review in March 2020, opined that plaintiff can lift or carry 10 pounds frequently and 20 pounds occasionally, can stand/walk for 6 hours, and sit for 6 hours in an 8-hour workday."  T. at 24 (citing T. at 93-94, 106-07, 123-25, 139-41).  "The doctors stated that the claimant should avoid concentrated exposure to extreme heat or cold, wetness, humidity, and respiratory irritants."  Id.  The ALJ found "[t]hese assessments, [which

were] supported by expertise, program knowledge and a review of the available medical evidence, [to be] persuasive."  Id.

Plaintiff argues that the ALJ's persuasiveness finding regarding Dr. Ahmed's and Dr. Kirsch's opinions is conclusory, as "there is no explanation of how the ALJ considered the supportability and consistency factors as to these two medical opinions." Dkt. No. 10 at 27.  The Court agrees.  The ALJ failed to specify how Dr. Ahmed's and Dr. Kirsch's opinions were supported, other than stating, generally, they were "supported by expertise, program knowledge, and a review of the available medical evidence."  T. at 24; see Jennifer G. v. Comm'r of Soc. Sec., No. 5:22-CV-00996 (MAD/ML), 2023 WL 8435991, at *7 (N.D.N.Y. Sept. 6, 2023) ("It is well-established that an ALJ may not generally assert that an opinion is 'consistent with' or 'supported by' the record, without further elaboration.") (citing Melissa S. v. Comm'r Soc. Sec., No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) ("[T]he ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true."), and Kathleen A., 2022 WL 673824, at *6), report and recommendation adopted, 2023 WL 7277260 (N.D.N.Y. Nov. 3, 2023).  The ALJ did not explain what medical evidence Dr. Ahmed and Dr. Kirsch reviewed and relied upon.  See Prieto v. Comm'r of Soc. Sec., No. 20-CV-3941 (RWL), 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021) (finding error where the ALJ "afforded the most weight" to the consultative examiner because the opinion was "supported by the medical evidence of record and by her underlying examination[ ]" but did not explain what medical evidence supported the opinion); see also Brianne S. v. Comm'r of Soc. Sec., No. 19-CV-1718-FPG, 2021 WL 856909 (W.D.N.Y. Mar. 8, 2021) (concluding that the

ALJ failed to adequately apply the supportability factor because the ALJ "did not examine what [the doctors] used to support their opinions and reach their ultimate conclusions."). Further, the ALJ did not discuss how Dr. Ahmed's and Dr. Kirsch's opinions were consistent with the other evidence in the record. See Raymond M., 2021 WL 706645, at *8 ("At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'") (quoting Jacqueline L., 515 F. Supp. 3d at 11). Thus, the ALJ's "conclusory statement is an insufficient explanation of the supportability [and consistency] factor[s] and is grounds for remand." Prieto, 2021 WL 3475625, at *13 (citations omitted); see Warren I., 2021 WL 860506, at *4 (remanding because the ALJ "failed to discuss what, if any, objective medical evidence and/or supporting explanations," supported the conclusions of the primary medical opinion on which he relied) (internal quotation marks omitted). On remand, the ALJ should discuss the consistency and supportability factors regarding the opinions offered by both Dr. Ahmed and Dr. Kirsch.

As remand is required, the Court need not reach plaintiff's remaining arguments, including whether the ALJ erred in excluding a time off task or absenteeism limitation. See Dkt. No. 10 at 10-17; see also Elizabeth P., 2022 WL 507367, at *15 n.13 ("As remand is required [due to the ALJ's deficiencies in evaluating the medical opinion evidence], the Court does not reach [the] plaintiff's remaining arguments concerning the ALJ's RFC . . . determination[ ]"); Jesse R. v. Comm'r of Soc. Sec., No. 3:20-CV-1220 (CFH), 2022 WL 813918, at *11 (N.D.N.Y. Mar. 17, 2022) ("As the ALJ erred under 20 C.F.R. § 404.1520c(b)-(c), remand is required and the Court need not address plaintiff's

remaining arguments"); Wilson v. Comm'r of Soc. Sec., No. 1:16-CV-77 (NAM), 2017 WL 1194229, at *5 (N.D.N.Y. Mar. 30, 2017) ("Because remand is recommended for the reasons discussed above, remand is also recommended for a new analysis at step five."); Hamilton v. Astrue, No. 5:11-CV-954 (GLS), 2012 WL 5303338, at *3 (N.D.N.Y. Oct. 25, 2012) ("Because [the plaintiff's] remaining arguments are contingent upon the ALJ's resolution of the foregoing issue on remand, the [C]ourt need not address them."). "On remand, . . . the ALJ should consider each of the other alleged errors not discussed in this decision as appropriate."  Travis L. v. Saul, No. 3:19-CV-663 (CFH), 2020 WL 5633823, at *10 (N.D.N.Y. Sept. 21, 2020).

### C. Nature of Remand

At the end of his brief, plaintiff summarily seeks a determination that he is disabled, but provides no argument as to why that relief is warranted.  See Dkt. No. 10 at 28.  This relief would only be warranted "'when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.'" Mortise v. Astrue, 713 F. Supp. 2d 111, 128 (N.D.N.Y. 2010) (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  As the ALJ is not required to adopt Ms. Harvey's, plaintiff's school psychologist, opinion that plaintiff is disabled, and there is evidence in the record that could support a finding that plaintiff is not disabled, the Court will remand for further proceedings.  See Thomas T. on behalf of E.G.T. v. Comm'r of Soc. Sec., No. 5:21-CV-1225 (BKS/DEP), 2023 WL 2049526, at *5 (N.D.N.Y. Jan. 31, 2023) (footnote omitted) (declining to remand for the calculation of benefits because "[t]he opinion evidence does arguably provide a basis to find that the claimant might perhaps meet the standard for disability, particularly as to the ability to remain on-task during a

workday[; h]owever, the relevant question is whether those opinions are consistent with the medical evidence, and the ALJ's failure in this case to show that she properly considered all of that evidence when assessing the opinions prevents meaningful review on that point."), report and recommendation adopted, 2023 WL 2048560 (N.D.N.Y. Feb. 16, 2023).

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's motion (Dkt. No. 10) be **GRANTED**; and it is further

**ORDERED**, that the Commissioner's decision be **REVERSED and REMANDED for further proceedings**; and it is

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision & Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Date:   March 12, 2024
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge